STATE of Missouri, Respondent,

v.

Ronnie D. GONZALES, Appellant.

No. SC 86129.

Supreme Court of Missouri,
En Banc.

Jan. 25, 2005.

trial, Gonzales claimed that Gossir was the initial aggressor and that he stabbed Gossir in self-defense. In support of his contention, Gonzales sought to introduce evidence of Gossir's reputation for violent, turbulent, and bizarre behavior. The court excluded this evidence, reasoning that Gossir's reputation was irrelevant as to who was the initial aggressor absent a showing that Gonzales was aware of the reputation. The jury found Gonzales guilty of second-degree murder and armed criminal action, and judgment was entered consistent with the jury's verdict.

---

Gary E. Brotherton, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. General, Stephanie M. Morrell, Assistant Atty. General, Jefferson City, for respondent.

RONNIE L. WHITE, Chief Justice.

## I.

Ronnie D. Gonzales (Gonzales) appeals from his convictions for second-degree murder and armed criminal action. The case was transferred from the court of appeals, Eastern District. This Court has jurisdiction. Mo. Const. art. V, sec. 10. The judgment of the trial court is reversed, and the cause is remanded.

## II.

Gonzales and Mike Gossir (Gossir) had an altercation that resulted in the stabbing of and ultimately the death of Gossir. At

## III.

A trial court enjoys considerable discretion in the admission or exclusion of evidence.[1] However, that discretion is abused when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration.[2]

Gonzales contends the trial court abused its discretion by excluding evidence of Gossir's reputation for violence in support of his claim of self-defense. A victim's reputation for violence, turbulence, and aggression may be admissible when a defendant has asserted self-defense.[3] Evidence of the victim's reputation for violence is logically relevant to two distinct issues in the self-defense context—the reasonableness of the defendant's fear of the victim and to prove that the victim was the initial aggressor.[4] Gonzales argues that evidence of Gossir's reputation for violence was relevant and admissible because he had introduced independent evidence sup-

1. *State v. Hall,* 982 S.W.2d 675, 680 (Mo. banc 1998).

2. *State v. Brown,* 939 S.W.2d 882, 883 (Mo. banc 1997).

3. *Hall,* 982 S.W.2d at 681; *State v. Buckles,* 636 S.W.2d 914 (Mo. banc 1982) (overruled on other grounds).

4. *See Buckles,* 636 S.W.2d at 923; *see also* MAI–CR 3d 306.06 Part C.

porting his claim that the stabbing was in self-defense.

■■ The State argues that in the absence of evidence that Gonzales was aware of Gossir's reputation the evidence was inadmissible. While this is correct with respect to reputation evidence offered for the purpose of showing the reasonableness of the defendant's fear of the victim,[5] a defendant is not required to demonstrate his awareness of the victim's reputation to the extent the victim's reputation for violence is offered on the question of who was the initial aggressor.[6] In *State v. Buckles* this Court stated:

> On the issue of self-defense there can be no doubt of the rule that evidence of the deceased's reputation for turbulence and violence is admissible as relevant to show who was the aggressor and whether a reasonable apprehension of danger existed; but such evidence must be proved by general reputation testimony, not specific acts of violence, and defendant must show he knew of such reputation *when the issue is reasonable apprehension.*[7]

The State argues that this Court's decision in *State v. Johns* eliminates the distinction drawn in *Buckles* and requires that the defendant be aware of the victim's reputation for violence regardless of the purpose for which the evidence is offered.[8] In *Johns*, this Court found no abuse of discretion in excluding the proffered evidence because there was no evidence that the defendant had "ever witnessed a violent reaction from the victim or heard about the victim's violent behavior toward others."[9] In support of this conclusion the Court stated:

> When the defendant asserts self-defense, a victim's reputation for violence is generally admissible *on the question of who is the aggressor.* But the *defendant must show that he was aware of the victim's violent reputation* or of 'the specific act or acts of violence.'[10]

The State contends that, with this passage, *Johns* overruled *Buckles sub silentio.*

The difficulty with the State's argument is that, other than the quoted language referring to "the aggressor," there is no indication that the reputation evidence in *Johns* was offered for that purpose.[11] There are, however, a number of indications that the evidence in *Johns* was offered to demonstrate the reasonableness of the defendant's fear of the victim. First, the *Johns* holding relies exclusively on cases where the victim's reputation for violence was offered to show the reasonableness of the defendant's apprehension of danger, not that the victim was the initial aggressor.[12] Furthermore, the *Johns* Court made no mention of *Buckles*, where evidence of the victim's reputation was offered on the question of who was the initial aggressor.

This Court further indicated that the distinction drawn by *Buckles* remains the

---

5. *State v. Waller*, 816 S.W.2d 212, 215–16 (Mo. banc 1991).

6. *Buckles*, 636 S.W.2d at 923.

7. *Id.*

8. *State v. Johns*, 34 S.W.3d 93, 111 (Mo. banc 2000).

9. *Id.*

10. *Johns*, 34 S.W.3d 93 at 111 (emphasis added), citing *State v. Hall*, 982 S.W.2d 675, 681 (Mo. banc 1998); *Waller*, 816 S.W.2d at 216.

11. *See* William A. Schroeder, Missouri Practice Series—Missouri Evidence, section 404.3(b)(2)(C), n. 42 and n. 43 (noting that *Johns* makes "no mention of the theory on which the evidence was offered.")

12. See footnote 10.

law in Missouri with its approval of MAI–CR3d 306.06 two years *after* the decision in *Johns.* The instruction contemplates the admission of evidence of the victim's reputation under either of two scenarios— where the defendant is unaware of the victim's reputation *or* where the defendant is aware of that reputation.[13] This is precisely the distinction drawn in *Buckles.*[14] The applicable Notes on Use for the instruction are consistent with this position:

> If the evidence of the bad reputation of the victim is not known to the defendant, then the evidence of such reputation is admissible only as evidence of who was the initial aggressor and is not admissible as evidence of reasonable fear of harm on the part of the defendant.[15]

■ The well-founded and generally accepted distinction drawn by *Buckles* and MAI–CR3d 306.06 is based on relevance.[16] In determining the reasonableness of the defendant's apprehension of danger, the defendant's state of mind is critical.[17] The victim's reputation for violence is only relevant to the defendant's state of mind if the defendant was aware of that reputation at the time of the altercation.[18] On the other hand, the defendant's state of mind is wholly irrelevant to the question of who was the initial aggressor. In determining who was the initial aggressor, the question is what the victim probably did, not what the accused probably thought the victim was going to do.[19]

Neither the defendant's belief that the victim was the initial aggressor nor the reasonableness of that belief bear on the determination of who actually "started it," because "[t]he inquiry is one of objective occurrence, not of subjective belief."[20] The identity of the initial aggressor is a fact that exists wholly independent of the defendant's state of mind; thus, unlike the reasonableness of the defendant's apprehension of danger, the defendant need not have been aware of the victim's reputation for evidence of that reputation to be logically relevant.[21]

Here, Gonzales sought to introduce his own testimony and that of several neighbors as to Gossir's reputation for violence, aggressiveness, and turbulence to prove that Gossir was the initial aggressor. This evidence was relevant and admissible on that issue, regardless of Gonzales's knowledge of that reputation. Moreover, the evidence was highly probative on the issue in light of the disputed accounts of the altercation as well as the State's portrayal of Gossir as a "gentle giant." The trial court misapplied the law in holding that Gonzales was required to demonstrate awareness of Gossir's reputation for violence before the evidence of that reputation could be admitted. The exclusion of Gonzales's proffered evidence of Gossir's reputation indicates a lack of careful consideration constituting an abuse of discretion. The other issues presented for appeal may not occur upon retrial; consequently, the Court declines to address them at this time.

---

13. *See* MAI–CR3d 306.06 Part C–Special Matters.

14. *Buckles,* 636 S.W.2d at 923.

15. MAI–CR3d 306.06, Notes on Use 6; *see also* MAI–CR3d 306.06, Notes on Use 7.

16. *Buckles,* 636 S.W.2d at 923.

17. *Waller,* 816 S.W.2d at 215.

18. *See* 1A Wigmore, Evidence Sec. 63, 1369 (Tillers rev.1983).

19. *Id.*

20. *Id.*

21. *See* Schroeder, *supra* section 404.3(b)(2)(C).

## IV.

The judgment of the trial court is reversed and the cause is remanded.

WOLFF, STITH, PRICE, TEITELMAN and LIMBAUGH, JJ., and ELLIS, Sp.J., concur.

RUSSELL, J., not participating.